GARRISON, Judge.
This is an appeal from a decision of the City Civil Service Commission upholding the action of the Department of Police and dismissing Leander R. Cittadino from the New Orleans Police Force (NOPD). From that judgment, which we reverse, plaintiff appeals.
At the time of his dismissal, Mr. Cittadino had been a Correctional Officer for the past 15 years. For 11 of those years, he had been employed by NOPD. Additionally, he worked two jobs for the full period of his employment with NOPD. (Tr. p. 15)
On or about June 5, 1981, Mr. Cittadino was dismissed from NOPD for “working as a security guard for the University of New Orleans during a period when he was on sick leave without having received permission from the Department of Police, and additionally for failing to conduct a proper search of a prisoner at Central Lockup who subsequently was found to possess a knife....”[1]
As a result of an automobile-motorcycle accident, Mr. Cittadino underwent back surgery and was hospitalized for 34 weeks. After he was discharged from the hospital but while still under his doctor’s care, Mr. Cittadino contacted NOPD and requested light duty. No light duty was available.
Dual employment is not an unheard of occurrence within NOPD. Sergeant Paul Graffeo testified that department regulations allow an officer to engage in dual employment upon the approval of the Officers’ Platoon Commander. We do not know who Mr. Cittadino’s Platoon Commander was at the time of the alleged infraction as that individual was not identified in the record. While “failure to obtain the Platoon Commander’s permission” is ostensibly the charge for which Mr. Cittadino was dismissed, the rule infractions cited are different. According to NOPD’s letter dated July 4,1983, Mr. Cittadino was dismissed on violations as follows:
“Your conduct, as outlined above, constitutes, in regards to I.A.D. Case # 81-133(R), violations of ASOP 75.0, paragraph 7, relative to Conduct While on Sick Leave and ASOP 85.0, paragraphs 4 and 10, relative to Outside Employment and, as to I.A.D. Case # 81-189(R), constitutes a violation of Rule 4, paragraph 4, subparagraphs a. and c., subsection 4., relative to Neglect of Duty. These Rules and Procedures read as follows:
“ASOP 75.0 SICK LEAVE
“CONDUCT WHILE ON SICK LEAVE
“7. A member on sick leave shall remain in his residence or approved place of confinement for the entire sick leave *166 period, except to visit a physician, hospital or clinic, or to obtain meals or medicine.
“The member shall notify his unit of assignment before leaving and upon returning from such.a visit.
“ASOP 85.0 PAID DETAILS
“4. Officers shall be responsible for obtaining and completing the necessary paid details forms from the Personnel Division.
“10. Officers shall not perform paid details during their regular tour of duty and shall not be compensated for paid details performed during their regular tour of duty.
* * sfc * * *
“RULE 4. PERFORMANCE OF DUTY
“4. NEGLECT OF DUTY
“a. Each member, because of his grade and assignment, is required to perform certain duties and assume certain responsibilities. A member’s failure to properly function in either or both of these areas constitutes a neglect of duty.
“c. The following acts or omissions to act, although not exhaustive, are considered neglect of duty:
“4. Failing to comply with instructions, oral or writing (sic), from any authoritative source.
“Moreover, your conduct is contrary to the standards of service as prescribed by Rule IX, Section 1., paragraph 1.1 of the Rules of the Civil Service Commission for the City of New Orleans. This Rule prescribes:
“RULE IX
DISCIPLINARY ACTIONS
“Section 1. MAINTAINING STANDARDS OF SERVICE:
“1.1 When any regular employee in the classified service is unable or unwilling to perform the duties of his position in a satisfactory manner or has committed any act to the prejudice of the service, or has omitted to perform any act that it was his duty to perform, or otherwise has become subject to corrective action, the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service. The action may extend to: (1) removal from the service, (2) retirement, (3) reduction in pay to the next lower rate in the range for the class, (4) demotion to any position of a lower class that the employee is deemed by the appointing authority and the Director to be competent to fill, (5) suspension without pay not exceeding in the aggregate one hundred twenty (120) days in any period of twelve (12) consecutive calendar months, (6) fine, (7) reprimand, or other less drastic measure of discipline which the appointing authority considers proper.
(as amended February 9, 1955 & July 22, 1975.)”
(p. 2-3)
Under ASOP 75.7, Mr. Cittadino was apparently charged with not remaining in his place of confinement. The notification requirement of the second paragraph does not apply as it stipulates “such a visit” which refers to “visit a physician, hospital, or clinic or to obtain meals or medicine” in the immediately preceeding paragraph. As to the charge that Mr. Cittadino failed to remain in his place of confinement, the type of evidence necessary to establish a charge of this nature would be testimony indicating the date(s) on which Mr. Cittadino left the place of confinement, the duration of time that he was gone, where he went, and why he went there, (i.e., he did not go to obtain meals, medicine, visit a physician, hospital or clinic). This is the type of evidence which NOPD must produce in order to substantiate a charge under ASOP 75.7. No such evidence was produced. Mr. Citta-dino, however, admitted that he worked at UNO during the period of confinement. Accordingly, this court may presume that he left his residence to do so. Mr. Cittadino admits that he was wrong in breaking this rule. In his brief, Mr. Cittadino states that *167 he needed the extra income for his family’s sake.
Turning to ASOP 85.4, we note that there is no evidence in the record that Mr. Citta-dino did not obtain and complete paid detail forms. Likewise ASOP 85.10 does not apply because the rule stipulates “regular tour of duty.” Mr. Cittadino was not on a “regular tour of duty,” because he was on sick leave. Are a sick leave and a “regular tour of duty” the same thing? We think not. We reserve discussion on Rule 4 until discussion of the “knife” incident.
Mr. Cittadino testified that his superiors had been aware of his dual employment for the 10 years and 10 months he had worked for NOPD. Mr. Cittadino further stated: “... everytime I asked for employment outside of the department, I never was denied.” (Tr. p. 15) There is no evidence repudiating Mr. Cittadino’s testimony that he worked two jobs with the knowledge and permission of his superiors for the period of his employment with NOPD. Additionally, there is no evidence of any prior suspensions.
Turning to the second charge against Mr. Cittadino, we note that in May, 1981, he was assigned as a Searching Doorman at Central Lockup. Correctional Officer Simms was also assigned as a Searching Doorman with Mr. Cittadino.
On either May 3 (as the testimony indicates) or May 13 (as stated in the Department of Police letter dated June 4, 1981), Bradford Blanche was admitted to Central Lockup at 2:08 a.m. At 2:30 a.m. Blanche was received at Parish Prison and was discovered to have a weapon in his possession. There is nothing to indicate where or when Blanche received the weapon. Specifically, there is no evidence that Blanche had the weapon on him at 2:08 a.m. Likewise, there is no evidence that Blanche did not obtain the weapon after he was searched by Cittadino and Simms. Neither Simms nor Blanche were called to testify.
Turning to the alleged infraction of Rule 4, we note that the evidence does not indicate that Cittadino and Simms were not searching the prisoners. Even if we assume that Blanche had the weapon in his possession at 2:08 a.m., then Cittadino merely failed to find this one weapon while searching this one prisoner. This court cannot conclude that such an omission constitutes “Neglect of Duty” to the degree that firing him from the force is a fair and equitable punishment, especially in light of the fact that NOPD failed to present evidence establishing whether it was Cittadino or Simms who failed to discover the knife which may or may not have been on Blanche’s person at that time.
Accordingly, we find that a dismissal in the instant case is so grotesquely unreasonable as to constitute capricious action.
For the reasons assigned, the decision of the City Civil Service Commission is reversed and we render judgment as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be and hereby is judgment in favor of Leander R. Cittadino, reinstating him as of May 27,1981 with full emoluments of office including back pay, all not subject to credit for any wages earned by Cittadino during the period of his dismissal, plus legal interest from judicial demand. All costs to be borne by the City Civil Service Commission.
REVERSED AND RENDERED.
WILLIAMS, J., concurs without reasons.
SCHOTT, J., dissents.

. Decision of the City Civil Service Commission rendered December 21, 1981.